

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
### FORT PIERCE DIVISION

# 19-14281-CV-ROSENBERG/MAYNARD

CLINTON STRANGE,

Plaintiff

v.

INTERNET LISTING SOLUTIONS LLC;

a Florida Limited Liability Company

TIMOTHY D. WILSON;

in his role as an Officer & Director of

 T WILSON INVESTMENTS LLC

LAUREN SILVERSTEIN;

in the role as an Officer & Director of

 T WILSON INVESTMENTS LLC

&

T WILSON INVESTMENTS LLC,

a Florida Limited Liability Company

Defendants

### CIVIL ACTION:
### COMPLAINT FOR WILLFUL AND KNOWING VIOLATIONS OF:
### THE TELEPHONE CONSUMER PROTECTION ACT OF 1991;
### THE LOUISIANA UNFAIR TRADE PRACTICES ACT OF 1972;
### &
### LOUISIANA CIVIL CODE ARTICLE 2315

**Jury Trial Demanded**

## PRELIMINARY STATEMENTS:

1. The Plaintiff *Pro Se* Clinton Strange brings this civil action against Defendants Internet Listing Solutions LLC ("ILS"); TIMOTHY D. WILSON ("TDW") in his role as a Director and Officer of ILS; LAUREN SILVERSTEIN ("LS") in the role as an Officer & Director of T WILSON INVESTMENTS LLC, and T WILSON INVESTMENTS LLC ("TWI") as a MGR (Manager of ILS) for their role/s in violations allegedly of Both State and Federal Laws including, but not limited to the Telephone Consumer Protection Act of 1991 ("TCPA"), and Louisiana Revised Statutes and Civil Codes. The Plaintiff brings this private civil action to enforce the provisions of these laws in his own response, as a responsible citizen of both the State of Louisiana and the United States of America, to the overwhelming wide-spread public outrage about the proliferation of intrusive, disturbing, and absolutely annoying, nuisance telemarketing practices. See *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012). The Plaintiff is seeking a maximum award for damages, and an enjoinder from further violations of the parts herein.

## JURISDICTION & VENUE:

2. **Jurisdiction** arises in this U.S. District court under 28 U.S. Code § 1331 because the action involves a Federal Question.
3. **Supplemental Jurisdiction** (should the Court decide to exercise Supplemental Jurisdiction) is proper pursuant to 28 U.S. Code § 1367(a)
4. **Venue** lies proper in this U.S. District Court pursuant to 28 U.S. Code § 1391 because a substantial portion of the alleged actions and or actionable misconduct originated from this U.S. District, and all the Defendants can be found in this U.S. District.

## THE PARTIES:

5. **Plaintiff** CLINTON STRANGE is an adult individual and a "person" as defined by 47 U.S. Code § 153(39) residing at the address of:

CLINTON STRANGE

7021 WINBURN DRIVE

GREENWOOD, LA 71033

6. **Defendant** INTERNET LISTING SOLUTIONS LLC is a Florida Limited Liability Company. According to the Florida Division of Corporations this Defendant has a principal place of business listed as:

INTERNET LISTING SOLUTIONS LLC

1701 SE TIFFANY AVENUE

SUITE #105

PORT SAINT LUCIE, FL 34952

, and whose Registered Agent is listed as:

TIMOTHY WILSON

c/o: INTERNET LISTING SOLUTIONS LLC

2526 SE ROBIN CIRCLE

PORT SAINT LUCIE, FL 34952

7. **Defendant** TIMOTHY D. WILSON is named in this action in his role as a Director and Officer of T WILSON INVESTMENTS LLC, which is the Manager of Defendant ILS.

According to the Tax Collector for St. Lucie County, Florida this Defendant is principally domiciled at the address of:

TIMOTHY WILSON

2526 SE ROBIN CIRCLE

PORT SAINT LUCIE, FL 34952

8. **Defendant** T WILSON INVESTMENTS LLC is named in this action as a MGR (Manager of ILS). According to the Florida Division of Corporations this Defendant has a principal place of business listed as:

T WILSON INVESTMENTS LLC

2526 SE ROBIN CIRCLE

PORT SAINT LUCIE, FL 34952

, and whose Registered Agent is listed as:

TIMOTHY WILSON

c/o: T WILSON INVESTMENTS LLC

2526 SE ROBIN CIRCLE

PORT SAINT LUCIE, FL 34952

9. **Defendant** LAUREN SILVERSTEIN is named in this action in the role as a Director and Officer of T WILSON INVESTMENTS LLC, which is the Manager of Defendant ILS. According to the Tax Collector for St. Lucie County, Florida this Defendant is principally domiciled at the address of:

LAREN SILVERSTEIN

2526 SE ROBIN CIRCLE

PORT SAINT LUCIE, FL 34952

## FACTUAL ALLEGATIONS:

### SECTION I:

### THE PLAINTIFF'S BREIF SYNOPSIS OF THE ACTION

10. The Defendants by and through a third-party Lead Generator / Auto-Dialer service acting as

their agent/s acting under the common law doctrine of "agency" placed numerous auto-dialed

calls to the Plaintiff's cellphone, which is registered on the Federal Do-Not-Call Listing, that

played pre-recorded voice messages that indicated that the calls were in regard to a "Google

Business Listing" in violation of subsections b and c of the TCPA. Once the Auto-Dialer

technology would transfer him to employees at the Defendants' call center the Defendants'

employees would not properly identify the company name and address, and process his

repeated requests to be placed on the company's internal Do-Not-Call list as required by

Federal and State Laws and the Telemarketing Sales Rule. The Plaintiff is seeking to recover

damages under both subsections b and c of the TCPA, and also recover damages under

Louisiana Laws and Codes.

## SECTION II:

### DEFENDANT'S ALLEGED USE OF AN ATDS

11. An Automatic Telephone Dialing System ("ATDS") is defined as equipment that has the capacity to "(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S. Code § 227(a)(1).

12. The Plaintiff alleges that the ATDS employed by the Defendants' Auto-Dialer agent/s was a VICI dial unit because the Plaintiff would hear a "balloon pop" sound when the dialer technology transferred him to one of the Defendants' live employees. VICI dial software equipment is an ATDS.

13. The Defendants' actual phone number to their office is (772) 807-1045.

14. The Defendants' auto-dialer agent placed calls to the Plaintiff's cellphone from a number that appeared on Plaintiff's Caller ID as 318-217-1001, a local number that geographically concealed where the call was originating from [See Exhibit A].

15. Regardless of whether or not the calls were placed by an ATDS (and they were) the calls "played" a pre-recorded voice message that warned the Plaintiff that his Google Business Listing was at risk of not being seen.

## SECTION III:

### DEFENDANTS' ALLEGED VIOLATIONS UNDER STATE AND FEDERAL LAWS

### PART A:

### VIOLATIONS OF THE CODE OF FEDERAL REGULATIONS

16. The Code of Federal Regulations states at 47 C.F.R. §64.1200  (a) No person or entity may:

(1) Except as provided in paragraph (a)(2) of this section, initiate any telephone call (other than a call made for emergency purposes or is made with the prior express consent of the

called party) using an automatic telephone dialing system or an artificial or prerecorded voice; (i) To any emergency telephone line, including any 911 line and any emergency line of a hospital, medical physician or service office, health care facility, poison control center, or fire protection or law enforcement agency; (ii) To the telephone line of any guest room or patient room of a hospital, health care facility, elderly home, or similar establishment; or (iii) To any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

17. The Code of Federal Regulations states at 47 C.F.R. §64.1200(b) that "All artificial or prerecorded voice telephone messages shall: (1) At the beginning of the message, state clearly the identity of the business, individual, or other entity that is responsible for initiating the call. If a business is responsible for initiating the call, the name under which the entity is registered to conduct business with the State Corporation Commission (or comparable regulatory authority) must be stated; (2) During or after the message, state clearly the telephone number (other than that of the autodialer or prerecorded message player that placed the call) of such business, other entity, or individual. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long-distance transmission charges. For telemarketing messages to residential telephone subscribers, such telephone number must permit any individual to make a do-not-call request during regular business hours for the duration of the telemarketing campaign; and (3) In every case where the artificial or prerecorded voice telephone message includes or introduces an advertisement or constitutes telemarketing and is delivered to a residential telephone line or any of the lines or telephone numbers described in paragraphs (a)(1)(i)

through (iii), provide an automated, interactive voice- and/or key press-activated opt-out mechanism for the called person to make a do-not-call request, including brief explanatory instructions on how to use such mechanism, within two (2) seconds of providing the identification information required in paragraph (b)(1) of this section. When the called person elects to opt out using such mechanism, the mechanism, must automatically record the called person's number to the seller's do-not-call list and immediately terminate the call. When the artificial or prerecorded voice telephone message is left on an answering machine or a voice mail service, such message must also provide a toll free number that enables the called person to call back at a later time and connect directly to the automated, interactive voice- and/or key press-activated opt-out mechanism and automatically record the called person's number to the seller's do-not-call list.

18. The Code of Federal Regulations states at 47 C.F.R. §64.1200(c) No person or entity shall initiate any telephone solicitation to: (1) Any residential telephone subscriber before the hour of 8 a.m. or after 9 p.m. (local time at the called party's location), or (2) A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government. Such do-not-call registrations must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator. Any person or entity making telephone solicitations (or on whose behalf telephone solicitations are made) will not be liable for violating this requirement if: (i) It can demonstrate that the violation is the result of error and that as part of its routine business practice, it meets the following standards: (A) Written procedures. It has established and implemented written procedures to comply with the national do-not-call

rules; (B) Training of personnel. It has trained its personnel, and any entity assisting in its compliance, in procedures established pursuant to the national do-not-call rules; (C) Recording. It has maintained and recorded a list of telephone numbers that the seller may not contact; (D) Accessing the national do-not-call database. It uses a process to prevent telephone solicitations to any telephone number on any list established pursuant to the do-not-call rules, employing a version of the national do-not-call registry obtained from the administrator of the registry no more than 31 days prior to the date any call is made, and maintains records documenting this process.

19. The Code of Federal Regulations states at 47 C.F.R. §64.1200(d) No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards: (1) *Written policy.* Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list. (2) *Training of personnel engaged in telemarketing.* Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list. (3) *Recording, disclosure of do-not-call requests.* If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request

within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity. (4) *Identification of sellers and telemarketers.* A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long-distance transmission charges.

(5) *Affiliated persons or entities.* In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised. (6) *Maintenance of do-not-call lists.* A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

20. The Defendants' employee (a male) that the Plaintiff was transferred to on August 14, 2018 at 2:38pm CST stated in response to the Plaintiff's question as to why ILS keeps calling stated "The calls will stop coming once you claim your listing".

21. The Defendants' employee refused to honor the Plaintiff's request to be placed on the company's do-not-call-list and even insinuated that the calls would not stop until the Plaintiff purchased the company's services.

22. The Defendants' employee was unwilling to make a meaningful disclosure as to what the name of the company was or provide a phone number or an address for the company. He just said the name of the entity calling was "ILS".

23. The Defendants' train their employees to never reveal the name of the company until after a monetary transaction has transpired to protect the company from lawsuits.

## PART B:
## VIOLATIONS OF THE TCPA

24. The TCPA states at subsection b: (1) Prohibitions: It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States— (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice— (i) to any emergency telephone line (including any "911" line and any emergency line of a hospital, medical physician or service office, health care facility, poison control center, or fire protection or law enforcement agency); (ii) to the telephone line of any guest room or patient room of a hospital, health care facility, elderly home, or similar establishment; or (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or

other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States.

25. The TCPA states at subsection b: (3) Private right of action: A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State— (A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation, (B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or (C) both such actions. If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

26. The Defendants either directly or more likely by and through a third-party lead generator/ auto-dialer agent acting under the common law of agency placed calls to the Plaintiff's cellular telephone utilizing an ATDS.

27. The Defendants either directly or more likely by and through a third-party lead generator/ auto-dialer agent acting under the common law of agency placed calls to the Plaintiff's cellular telephone that played pre-recorded voice messages.

28. The Defendants committed violations of 47 U.S. Code § 227(b)(1)(A)(iii) of the TCPA.

29. The Defendants willfully, knowingly, and intentionally committed violations of 47 U.S. Code § 227(b)(1)(A)(iii) of the TCPA.

30. The Defendants are liable to the Plaintiff for violations of 47 U.S. Code § 227(b)(1)(A)(iii) of the TCPA.

31. The TCPA states at subsection c: (5) Private right of action: A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State— (A) an action based on a violation of the regulations prescribed under this subsection to enjoin such violation, (B) an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or (C) both such actions. It shall be an affirmative defense in any action brought under this paragraph that the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection. If the court finds that the defendant willfully or knowingly violated the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

32. The Plaintiff was and is a person who received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under 47 U.S. Code § 227(c)(5).

33. The Plaintiff received more than one telephone call in a 12-month period that was placed on behalf of the Defendants herein.

34. The Defendants are liable to the Plaintiff for damages for willfully knowingly and intentionally violating 47 U.S. Code § 227(c)(5).

35. The Telephone Consumer Protection Act of 1991 (TCPA) states in relevant part under subsection e: (1) In general It shall be unlawful for any person within the United States, in

connection with any telecommunications service or IP-enabled voice service, to cause any caller identification service to knowingly transmit misleading or inaccurate caller identification information with the intent to defraud, cause harm, or wrongfully obtain anything of value, unless such transmission is exempted pursuant to paragraph (3)(B).

36. The Defendants intended to mislead and defraud the Plaintiff, cause harm to the Plaintiff and his chattel, and wrongfully obtain anything of value (*money*) from the Plaintiff.

37. Technical and procedural standards specific to automated calls are included in § 227(d) and accompanying regulation 47 C.F.R. § 64.1200(b), which do not provide a private right of action or a statutory-damages provision. They can be however alleged as to the conduct of a Defendant in establishing a pattern of violative behavior worthy of treble damages.

38. Recovery of damages for the two separate provisions (of subsections b and c of the TCPA) does not upset Congress's balance in setting damages "'fair to both the consumer and the telemarketer.'" See GVN Mich., 561 F.3d at 632 n.8 (quoting 137 Cong. Rec. S16,204, S16,205 (daily ed. Nov. 7, 1991) (statement of Sen. Hollings)).

### PART C:
### VIOLATIONS OF LOUISIANA LAW

39. Defendants violated Louisiana Revised Statute 45: §844.3 which states in relevant part "The commission shall investigate any complaints received concerning violations of this Chapter.  If, after investigating any complaint, the commission finds that there has been a violation of this Chapter, the commission may impose a civil penalty not to exceed five hundred dollars for each violation against the telephone solicitor".

40. Defendants are a Telephone Solicitor as that term is defined by Louisiana Revised Statute 45: §844.1(3) which states: (3)  "Telephone solicitor" means any natural person, firm,

organization, partnership, association, or corporation, or a subsidiary or affiliate thereof, doing business in this state, who makes or causes to be made a telephone solicitation, including but not limited to calls made by use of automated dialing or recorded message devices.

41. Defendants violated Louisiana Revised Statute 51: §1741.1 that reads as follows: "The legislature of the state of Louisiana finds that the citizens of this state are potential targets of a telephone scam known as "caller ID spoofing" or "caller ID fraud," which allows a caller to hide his or her true identity by modifying caller ID information with the intent to mislead, defraud, deceive, cause harm, or wrongfully obtain anything of value. It is, therefore, the intent of this Chapter to protect Louisiana citizens from such scams which have led to financial loss, the loss of personal information, harassment, and potentially threatening telephone calls".

42. Louisiana Revised Statute 51: §1741.5 which states: Whoever violates the provisions of this Chapter shall be subject to injunctive relief, treble damages, court costs, and reasonable attorney fees. Any person or entity who is adversely affected by a violation of this Chapter may bring an action against a person who knowingly inserts false information into a caller identification system with the intent to cause harm to, wrongfully obtain anything of value from, mislead, defraud, or deceive the recipient of a telephone call. A person who brings an action under this Chapter may seek to enjoin further violations of R.S. 51:1741.4 and seek to recover as provided for in this Section.   The attorney general, or a district attorney in a parish where a violation occurs, may bring an action against a violator for injunctive relief and to recover a civil penalty of up to ten thousand dollars per violation.   The remedies

provided for in this Section shall not preclude the seeking of other remedies, including criminal remedies, provided by law.

43. Defendants willfully, knowingly and intentionally mislead each and every person they call by means of the robocalls' pre-recorded voice message implying (and even outright stating) that they are "authorized Google My Business Representatives". The Defendants have no more affiliation with Google, LLC than the Plaintiff who maintains a Gmail account.

44. Defendants violated Louisiana Revised Statute 51: §1401 et seq. which is also called The Louisiana Unfair Trade Practices and Consumer Protection Law.

45. Louisiana Revised Statute 51: §1402(7) defines the term "knowing" as it applies to the alleged conduct of the Defendants as "Knowingly" means that the act or practice used was such that a reasonably prudent businessman knew or should have known that the act or practice was a violation of this Chapter.

46. Louisiana Revised Statute 51: §1402(8)  defines the term "Person"; meaning a natural person, corporation, trust, partnership, incorporated or unincorporated association, and any other legal entity.

47. Plaintiff is statutorily defined by Louisiana Revised Statute 51: §1402(9) as a "Person with a disability" meaning a person with a mental, physical, or developmental disability that substantially impairs that person's ability to provide adequately for his own care or protection.

48. Defendants are engaged in the business of telemarketing and the sale of Google Business Listings and Search Engine Optimization Services to consumers who reside in The State of Louisiana (as well as Nationwide) and this activity is defined at Louisiana Revised Statute 51: §1402(10) as "Trade" or "commerce" meaning the advertising, offering for sale, or

distribution of any services and any property, corporeal or incorporeal, immovable or movable, and any other article, commodity, or thing of value wherever situated, and includes any trade or commerce directly or indirectly affecting the people of the state.

49. Louisiana Revised Statute 51: §1407 covers:  Restraining prohibited acts at (B) In addition to the remedies provided herein, the attorney general may request and the court may impose a civil penalty against any person found by the court to have engaged in any method, act, or practice in Louisiana declared to be unlawful under this Chapter.  In the event the court finds the method, act, or practice to have been entered into with the intent to defraud, the court has the authority to impose a penalty not to exceed five thousand dollars for each violation. C.  In addition to any other civil penalty provided for in this Section, if a person is found by the court to have engaged in any method, act, or practice in Louisiana declared to be unlawful under this Chapter, and the violation was committed against an elder person or a person with a disability, as defined in this Section, the court may impose an additional civil penalty not to exceed five thousand dollars for each violation. D.  In determining whether to impose an enhanced civil penalty under this Section and the amount thereof, the court shall consider any of the following: (1)  Whether the defendant's conduct was in disregard of the rights of the elder person or person with a disability. (2)  Whether the defendant knew or should have known that the defendant's conduct was directed to an elder person or person with a disability. (3)  Whether the elder person or person with a disability was more vulnerable to the defendant's conduct because of age, poor health, infirmity, impaired understanding, restricted mobility, or disability than other persons and whether the elder person or person with a disability actually suffered physical, emotional, or economic damage resulting from the defendant's conduct. (4)  Whether the defendant's conduct caused

an elder person or person with a disability to suffer any of the following: (a) Mental or emotional anguish. (b) Loss or encumbrance upon a primary residence of the elder person or person with a disability. (c) Loss of or encumbrance upon the principal employment or principal source of income of the elder person or person with a disability. (d) Loss of funds received under a pension or retirement plan or a governmental benefits program. (e) Loss of property set aside for retirement or for personal or family care and maintenance. (f) Loss of assets essential to the health and welfare of the elder person or person with a disability.

(5) Any other factors the court deems appropriate. E. An award of restitution under this Chapter has priority over a civil penalty imposed by the court under this Section.

50. The Plaintiff is a mobility impaired individual with service-connected disabilities as defined by Louisiana Statutes.

51. Defendants violated Louisiana Civil Code Article 2315 by trespass to Plaintiff's chattel. The unwanted Robocalls were violative of the Plaintiff's rights to be secure in his property and possessions (which includes his movable property). The Defendants' Robocalls trespassed on the Plaintiff's chattel by this violative conduct.

52. Defendants violated Louisiana Civil Code Article 2315 by conversion of Plaintiff's chattel. The Defendants' Robocalls depleted the Plaintiff's battery when it caused his phone to "ring" and the display to "light-up" instead of being in "rest-mode", took up a measurable amount of available memory storage capacity because the call record was stored in Plaintiff's call logs and when voicemails were left.

53. Defendants violated Louisiana Civil Code Article 2315 by attempting to defraud and obtain (anything of value) the Plaintiff's money. The Plaintiff's name email address and certain

demographic information obtained during the violative phone call has measurable value particularly for any sort of marketing person.

54. Defendants violated Louisiana Civil Code Article 2315 by obtaining the Plaintiff's personal information during the violative calls (specifically the August 14, 2018 call) using deceptive means. The Defendants acquired "additional" information in addition to that which they already had during the course of the call that was placed illegally to Plaintiff's cellphone using deceptive means.

55. Defendants violated Louisiana Civil Code Article 2315 by harassment. The Plaintiff was Robocalled dozens of times by the Defendants, and any reasonable person (or twelve of them) would consider this conduct as harassment.

56. Plaintiff knows that *normally* in regard to his State Law claims in particular that the Statute of Limitations is one year. Louisiana is a state that tolls the statute of limitations where fraud and concealment is involved. The Plaintiff alleges that concealment, intentional misleading, and fraud were involved in this action; so the Plaintiff alleges that the statute of limitations began to run on his claims both for Federal Laws and State Laws beginning on or about February 11, 2019 which is the date that the Plaintiff discovered the identity of the calling party responsible for the Robocalls.

## PART D:
## VIOLATIONS OF FLORIDA LAW

57. Florida Statute 501.059 states at (2)   "Any telephone solicitor who makes an unsolicited telephonic sales call to a residential, mobile, or telephonic paging device telephone number shall identify himself or herself by his or her true first and last names and the business on whose behalf he or she is soliciting immediately upon making contact by telephone with the person who is the object of the telephone solicitation.".

58. Florida Statute 501.059 states at (5)   "A telephone solicitor or other person may not initiate an outbound telephone call, text message, or voicemail transmission to a consumer, business, or donor or potential donor who has previously communicated to the telephone solicitor or other person that he or she does not wish to receive an outbound telephone call, text message, or voicemail transmission".

59. Florida Statute 501.059 states at (8)(a)   "No person shall make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called.".

60. Florida Statute 501.059 states at 8(c)   "It shall be unlawful for any person who makes a telephonic sales call or causes a telephonic sales call to be made to fail to transmit or cause not to be transmitted the originating telephone number and, when made available by the telephone solicitor's carrier, the name of the telephone solicitor to any caller identification service in use by a recipient of a telephonic sales call. However, it shall not be a violation to substitute, for the name and telephone number used in or billed for making the call, the name of the seller on behalf of which a telephonic sales call is placed and the seller's customer service telephone number, which is answered during regular business hours. If a telephone number is made available through a caller identification service as a result of a telephonic sales call, the solicitor must ensure that telephone number is capable of receiving telephone calls and must connect the original call recipient, upon calling such number, to the telephone solicitor or to the seller on behalf of which a telephonic sales call was placed. For purposes of this section, the term "caller identification service" means a service that allows a telephone subscriber to have the telephone number and, where available, the name of the

calling party transmitted contemporaneously with the telephone call and displayed on a device in or connected to the subscriber's telephone.".

61. Florida Statute 501.059 states at 8(d)    "It shall be unlawful for any person who makes a telephonic sales call or causes a telephonic sales call to be made to intentionally alter the voice of the caller in an attempt to disguise or conceal the identity of the caller in order to defraud, confuse, or financially or otherwise injure the recipient of a telephonic sales call or in order to obtain personal information from the recipient of a telephonic sales call which may be used in a fraudulent or unlawful manner.".

62. The Defendants violated Florida Law by placing auto-dialed calls to the Plaintiff's cellphone which played a pre-recorded voice without the Plaintiff's consent from a caller ID which appeared on the display to be local, and when the Plaintiff answered the Defendants' employee/s would mislead the Plaintiff about who they represented (certainly not Google), and failed to properly identify themselves.

63. Defendants violated Florida Statutes on each and every call they placed to the Plaintiff's cellphone.

## SECTION IV:

## HOW THE PLAINTIFF SOUGHT TO MITIGATE HIS DAMAGES

64. The Plaintiff would usually (aside from the August 14, 2018 call) press the key on his cellphone's keypad to be "placed on the do-not-call-list" when the Defendants would call him.

65. The Plaintiff registered his cellphone number 318-423-5057 on the U.S. Federal Trade Commission's Do-Not-Call Registry on January 3, 2018 [See Exhibit B].

## SECTION V:

## THE INDIVIDUAL ROLES OF THE DEFENDANTS AND ACTORS

## PART A:

## THE LEAD GENERATOR / THIRD-PARTY DIALER

66. The Defendants likely employed a third-party lead-generator that actually placed the offending calls. The U.S Federal Trade Commission has held that these third parties are acting under the direction and command of the "person" on whose behalf the calls are placed.

67. Companies who operate similarly as the Defendants utilize a third-party lead generator so they can claim "we don't use and ATDS or place Robocalls".

68. Companies who operate similarly as the Defendants utilize a third-party lead generator so they can reduce labor costs by shifting the burden of wasted time on to the consumers by placing thousands of calls per day instead of hundreds of cold calls, and the Defendants' employees only spend time answering the calls that the consumer has elected to engage the dialer technology with (to be connected with an Authorized Google My Business Representative).

69. For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA,* CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

70. In its January 4, 2008 ruling, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.* (specifically

recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

71. In fact, the Federal Communication Commission has instructed that sellers such as ILS may not avoid liability by outsourcing telemarketing to third- parties.

72. Allowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third - parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "sellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy." *May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

73. On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers.".

74. Any reasonable seller that accepts telemarketing call leads from lead generators would, and indeed must, investigate to ensure that those calls were made in compliance with TCPA rules and regulations.

75.  Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

**PART B:**
**THE KNOWN STRUCTURE OF THE NAMED DEFENDANTS AND THEIR**
**LIABILITY TO THE PLAINTIFF FOR DAMAGES**

76. Defendant TWI is listed as the Manager of Defendant ILS.

77. Legally TWI is responsible for the conduct of ILS.

78. Both Defendants TDW and LS are responsible for the oversight, and day-to-day operations of TWI and subsequently ILS.

79. Defendants TWI, TDW, and LS are recognized under the doctrine of *Respondeat Superior* for the actions of Defendant ILS.

80. Defendant ILS is liable to the Plaintiff for damages, and Defendants TWI, TDW, and LS are vicariously liable to the Plaintiff for the conduct of Defendant ILS.

81. In *Larry v. Doctors Answers, LLC*, No. cv-12-S-3510-NE, 2013 WL 987879 (N.D. Ala. March 8, 2013) the Court found for the Plaintiff rejecting Defendants' argument that they could not be personally liable for alleged wrong doing of the company, the Court noted "'[t]he fact that the persons . . . acting [in violation of federal law] are acting for a corporation also, of course, may make the corporation liable under the doctrine of

respondeat superior. It does not relieve the individuals of their responsibility,'" adding that "an officer may be personally liable under the TCPA if he had direct, personal participation in or personally authorized the conduct found to have violated the statute and was not merely tangentially involved. Individuals who directly (and here, knowingly and willfully) violate the TCPA should not escape liability solely because they are corporate officers.'"

## SECTION VI:
## THE COUNTS
### COUNT I:
**(Plaintiff v. All Defendants)**
## NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT
### 47 .S. Code § 227(c)(5)

82. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

83. Subsection c of the TCPA makes it unlawful for a telemarketer to place more than one telemarketing call to a number registered on the Federal Do-Not-Call list in a twelve-month period.

84. Evidence presented at trial will show that the Defendants placed more than one telemarketing call to the Plaintiff's cellphone which is registered on the Do-Not-Call list within a twelve-month period.

85. To the extent the Court finds that this conduct was only negligent the Plaintiff seeks damages of $500.00 for each and every violation under this count.

### COUNT II:
**(Plaintiff v. All Defendants)**
## WILLFUL AND KNOWING VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

**47 U.S. Code § 227(c)(5)**

86. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

87. Subsection c of the TCPA makes it unlawful for a telemarketer to place more than one telemarketing call to a number registered on the Federal Do-Not-Call list in a twelve-month period.

88. Evidence presented at trial will show that the Defendants placed more than one telemarketing call to the Plaintiff's cellphone which is registered on the Do-Not-Call list within a twelve-month period.

89. To the extent the Court finds that this conduct was done willfully and knowingly the Plaintiff seeks damages of $1500.00 for each and every violation under this count.

**COUNT III:**

**(Plaintiff v. All Defendants)**

**NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT**

**47 U.S. Code § 227(b)(1)(A)(iii)**

90. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

91. Subsection b of the TCPA makes it unlawful for a telemarketer to place calls to a cellphone using an ATDS or a pre-recorded voice (message) without the written consent of the called party. The Defendants did not have the Plaintiff's consent.

92. Evidence presented at trial will show that the Defendants placed dozens of such calls to the Plaintiff's cellphone.

93. To the extent the Court finds that this conduct was only negligent the Plaintiff seeks damages of $500.00 for each and every violation under this count.

## COUNT IV:

### (Plaintiff v. All Defendants)

## WILLFUL AND KNOWING VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

### 47 U.S. Code § 227(b)(1)(A)(iii)

94. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

95. Subsection b of the TCPA makes it unlawful for a telemarketer to place calls to a cellphone using an ATDS or a pre-recorded voice (message) without the written consent of the called party. The Defendants did not have the Plaintiff's consent.

96. Evidence presented at trial will show that the Defendants placed dozens of such calls to the Plaintiff's cellphone.

97. To the extent the Court finds that this conduct was done willfully and knowingly the Plaintiff seeks damages of $1500.00 for each and every violation under this count.

## COUNT V:

### (Plaintiff v. All Defendants)

## NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

### 47 U.S. Code § 227(e)(1)

98. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

99. Plaintiff is unable to recover monetary damages under this count which alleges violations of the Truth In Caller ID Act as amended to the TCPA, but seeks injunctive relief enjoining the Defendants from future violations.

## COUNT VI:

### (Plaintiff v. All Defendants)

## WILLFUL AND KNOWING VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

### 47 U.S. Code § 227(e)(1)

100. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

101. Plaintiff is unable to recover monetary damages under this count which alleges violations of the Truth In Caller ID Act as amended to the TCPA, but seeks injunctive relief enjoining the Defendants from future violations.

102. While Plaintiff cannot recover money damages directly under this count the Plaintiff prays that the Court would consider violations of this section in its ruling when weighing *whether or not* to stack and treble the damages under the other counts and causes of action in the complaint.

## CAUSE OF ACTION No. VII:

### (Plaintiff v. All Defendants)

## NEGLIGENT VIOLATIONS OF THE LOUISIANA TELEPHONE CONSUMER RELIEF ACT OF 2001

### Louisiana Revised Statute 45: §844.3

103. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

104.   The statute under this count states: The commission shall investigate any complaints received concerning violations of this Chapter.  If, after investigating any complaint, the commission finds that there has been a violation of this Chapter, the commission may impose a civil penalty not to exceed five hundred dollars for each violation against the telephone solicitor.

105.   The Plaintiff will provide to the Louisiana Public Service Commission evidence garnered during discovery as it relates to this cause of action, and allow the Commission to investigate, and will provide the Court through Judicial Notice of the Commission's findings to aid the Court in determining whether or not it should award damages under this cause of action for Negligent Violations.

**106.**   The Plaintiff is entitled to and seeks injunctive relief enjoining the Defendants from future violations of this part.

## CAUSE OF ACTION No. VIII:

### (Plaintiff v. All Defendants)

### WILLFUL AND KNOWING VIOLATIONS OF THE LOUISIANA TELEPHONE CONSUMER RELIEF ACT OF 2001

### Louisiana Revised Statute 45: §844.3

107.   Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

108.   The statute under this count states: The commission shall investigate any complaints received concerning violations of this Chapter.  If, after investigating any complaint, the commission finds that there has been a violation of this Chapter, the commission may impose a civil penalty not to exceed five hundred dollars for each violation against the telephone solicitor.

109.   The Plaintiff will provide to the Louisiana Public Service Commission evidence garnered during discovery as it relates to this cause of action, and allow the Commission to investigate, and will provide the Court through Judicial Notice of the Commission's findings to aid the Court in determining whether or not it should award damages under this cause of action for Willful and Knowing Violations.

110.   The Plaintiff is entitled to and seeks injunctive relief enjoining the Defendants from future violations of this part.

## CAUSE OF ACTION No. IX:
### (Plaintiff v. All  Defendants)
### NEGLIGENT VIOLATIONS OF
### THE LOUISIANA CALLER ID ANTI-SPOOFING ACT OF 2009
### Louisiana Revised Statute 51: §1741.5

111.   Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

112.   Plaintiff is a person who was adversely affected by violations under this cause of action regarding caller ID falsification, manipulation, and or spoofing because he suffered harm, loss, and injury as outlined in the complaint.

113.   The Defendants violated this section with intent. To the extent that the Court finds that the intent was negligent in nature the Plaintiff seeks monetary damages to be determined by the Court or the trier of fact.

114.   The Plaintiff is entitled to and seeks injunctive relief from further violations under this cause of action.

## CAUSE OF ACTION No. X:

**(Plaintiff v. All Defendants)**

## WILLFUL AND KNOWING VIOLATIONS OF

## THE LOUISIANA CALLER ID ANTI-SPOOFING ACT OF 2009

**Louisiana Revised Statute 51: §1741.1 et seq.**

115.   Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

116.   Plaintiff is a person who was adversely affected by violations under this cause of action regarding caller ID falsification, manipulation, and or spoofing because he suffered harm, loss, and injury as outlined in the complaint.

117.   The Defendants *knowingly* violated this section with intent. To the extent that the Court finds that the intent was willful and knowing in nature the Plaintiff seeks monetary damages to be determined by the Court or the trier of fact.

118.   The Plaintiff is entitled to and seeks injunctive relief from further violations under this cause of action.

## CAUSE OF ACTION No. XI:

**(Plaintiff v. All Defendants)**

## NEGLIGENT VIOLATIONS OF

## THE LOUISIANA UNFAIR TRADE PRACTICES ACT OF 1972

**Louisiana Revised Statute 51: §1409(A)**

119.   Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

120.   Any person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act, or practice declared unlawful by R.S. 51:1405, may bring an action individually but not in a representative capacity to recover actual damages.

121.   The Plaintiff suffered an ascertainable loss as a result of the Defendant's violative conduct.

122.   The Plaintiff did not suffer any loss from the direct exchange of funds through a "purchase", though that was certainly the Defendants' intent, but he did suffer the loss of a measurable amount of time, over the course of a few years, wasted by the Defendants' actionable conduct. The reason the Defendants engaged an ATDS to place the Robocalls to the Plaintiff was to shift the burden of wasted time onto consumers like the Plaintiff. The ATDS technology platform that the Defendants utilize, either directly or via a third-party lead generator, has the capacity to place thousands of calls a day without the Defendants having to manually dial calls and deal with each uninterested consumer directly.

123.   The Defendants robbed the Plaintiff of his time.

124.   The Defendants obtained certain of his Personally Identifying Information (PII). The Plaintiff's PII certainly has a value capable of being measured. The information was obtained using deceptive means such as use of a technology platform that manipulated, falsified, and or spoofed the identity of the calling party.

125.   The Plaintiff's email address is a tangible or intangible *thing* that has measurable value. The best rough estimate that seemed backed by science and calculation that the Plaintiff was able to find online estimated the value of a verified email address at approximately $8.97 (Eight Dollars and ninety-seven cents).

126.   The Plaintiff's demographic information garnered by the Defendants' Robocall coupled with his email address could place that email address in a higher value range.

127.   The Plaintiff believes and alleges that although the Defendants were unable to sell him a Google Business Listing, they were able to take that PII and sell it to at least one other third-party for marketing purposes.

128.   To the extent that the Court finds this conduct was negligent in nature the Plaintiff seeks to recover *at least* the actual damages under this cause of action at the discretion of the Court or trier of fact.

129.   The Plaintiff is entitled to and seeks injunctive relief from further violations of these parts.

## CAUSE OF ACTION No. XII:
### (Plaintiff v. All Defendants)
### WILLFUL AND KNOWING VIOLATIONS OF
### THE LOUISIANA UNFAIR TRADE PRACTICES ACT OF 1972
### Louisiana Revised Statute 51: §1409(A)

130.   Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

131.   Any person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act, or practice declared unlawful by R.S. 51:1405, may bring an action individually but not in a representative capacity to recover actual damages.

132.   The Plaintiff suffered an ascertainable loss as a result of the Defendants' violative conduct.

133.   The Plaintiff did not suffer any loss from the direct exchange of *funds* through a "purchase", though that was certainly the Defendants' intent, but he did suffer the loss of a measurable amount of time, over the course of a few years, wasted by the Defendants'

actionable conduct. The reason the Defendants engaged an ATDS to place the Robocalls to the Plaintiff was to shift the burden of wasted time onto consumers like the Plaintiff. The ATDS technology platform that the Defendant utilizes, either directly or via a third-party lead generator, has the capacity to place thousands of calls a day without the Defendants having to manually dial calls and deal with each uninterested consumer directly.

134.   The Defendants robbed the Plaintiff of his time.

135.   The Defendants obtained certain of his Personally Identifying Information (PII). The Plaintiff's PII certainly has a value capable of being measured. The information was willfully and knowingly obtained using deceptive means such as use of a technology platform that manipulated, falsified, and or spoofed the identity of the calling party.

136.   The Plaintiff's email address is a tangible or intangible *thing* that has measurable value. The best rough estimate that seemed backed by science and calculation that the Plaintiff was able to find online estimated the value of a verified email address at approximately $8.97 (Eight Dollars and ninety-seven cents).

137.   The Plaintiff's demographic information garnered by the Defendants' Robocalls coupled with his email address could place that email address in a higher value range.

138.   The Plaintiff believes and alleges that although the Defendants were unable to sell him a Google Business Listing, they were able to take that PII and sell it to at least one other third-party for marketing purposes.

139.   To the extent that the Court finds this conduct was willful and knowing in nature the Plaintiff seeks to recover *at least* three times the actual damages under this cause of action at the discretion of the Court or trier of fact.

140.   The Plaintiff is entitled to and seeks injunctive relief from further violations of these parts.

## CAUSE OF ACTION No. XIII:
### (Plaintiff v. All Defendants)
### NEGLIGENT VIOLATIONS OF
### LOUISIANA CIVIL CODE ARTICLE 2315
### Trespass to Chattel

141.   Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

142.   The Plaintiff alleges (in regard to his cellphone) that the Defendants dispossessed the Plaintiff of a corporeal movable (property/chattel) for the purposes of unjust enrichment which is a tort falling under the common law doctrine of *Delictual Fault.* In this instant case the Defendants owed a duty of care as a Licensed sales professional (unless they are unlicensed by the Florida Department of Agriculture) to the Plaintiff who is presumed to be a least sophisticated consumer to not cause the types of harm to the Plaintiff as described herein by means of tort feasance and Trespassing to Plaintiff's chattel.

143.   The Plaintiff seeks only actual monetary damages for each and every violation under this cause of action at the discretion of the Court or alternatively the trier of fact.

144.   The Plaintiff is entitled to and seeks injunctive relief from future violations of this part.

## CAUSE OF ACTION No. XIV:
### (Plaintiff v. All Defendants)
### WILLFUL AND KNOWING VIOLATIONS OF
### LOUISIANA CIVIL CODE ARTICLE 2315
### Trespass to Chattel

145. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

146. The Plaintiff alleges (in regard to his cellphone) that the Defendants intentionally dispossessed the Plaintiff of a corporeal movable (property/chattel) for the purposes of unjust enrichment which is a tort falling under the common law doctrine of *Delictual Fault*. In this instant case the Defendants owed a duty of care as a Licensed sales professional ( assuming the Defendants have a Telemarketing License issued by the Florida Department of Agriculture) to the Plaintiff who is presumed to be a least sophisticated consumer to not cause the types of harm to the Plaintiff as described herein by means of willful and knowing tort feasance and Trespassing to Plaintiff's chattel.

147. The Plaintiff seeks treble damages for each and every violation under this cause of action at the discretion of the Court or alternatively the trier of fact.

148. The Plaintiff is entitled to and seeks injunctive relief from future violations of this part.

### CAUSE OF ACTION No. XV:
### (Plaintiff v. All Defendants)
### NEGLIGENT VIOLATIONS OF
### LOUISIANA CIVIL CODE ARTICLE 2315
### Conversion of Chattel

149. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

150. The Plaintiff alleges that the Defendants are at least is Negligently Liable to the Plaintiff for Conversion of Plaintiff's corporeal movable (property/ his cellphone) by means of their unlawful conduct as outlined in the complaint.

151.    To the extent the Court or trier of fact finds that the Defendants are liable for damages under this cause of action the Plaintiff seeks actual damages.

152.    The Plaintiff is entitled to and seeks injunctive relief from the Court enjoining the Defendants from further violations of this part.

## SECTION VII:

## PRAYER FOR RELIEF

**Jury Trial Demand;**

Plaintiff demands trial by jury on all issues so triable.

In regard to the Plaintiff's State Law Causes of Action Nos. VII through XV the Plaintiff invokes Louisiana Civil Code 2324.1 which states:
"In the assessment of damages in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury".

**Prayer for Relief;**

WHEREFORE, Plaintiff seeks judgement in Plaintiff's favor and damages against the Defendants, based on the following requested relief:

Statutory Damages;
Actual Damages;
Treble Damages;
Stacked Damages;
Pre and Post Judgement Interest;
Enjoinder from further violations of these parts;
Costs of litigating the action together along with all reasonable attorney's fees (if any) and court costs;
And such other and further relief as may be necessary, just and proper.

Respectfully Submitted,

X _____         8-7-2019
Clinton Strange
Pro Se                                        Dated
7021 Winburn Drive
Greenwood, LA 71033
318-423-5057
parsmllc@gmail.com